UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DANIELLE M. SOMERVILLE-WHITE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  1:23-cv-00208 (UNA) |
| TOM VILSACK, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the court on its initial review of plaintiff's *pro se* complaint, ECF No. 1, and application for leave to proceed *in forma pauperis*, ECF No. 2.  The court will grant the *in forma pauperis* application and dismiss the case for the reasons explained below.

Plaintiff, a resident of Jonesville, Virginia, sues the United States Secretary of Agriculture, the United States Patent Office, Boehringer Ingelheim Animal Health USA, Inc. and its CEO, and CEVA Animal Health, LLC.  The complaint begins somewhat coherently, as plaintiff appears to be challenging the United States Department of Agriculture's implementation of an initiative she refers to as the "ORV bait program," which she asserts is a federal plan to immunize wild raccoons to prevent the spread of rabies.  Plaintiff alleges that the defendants have illegally manufactured and then distributed these baits, on both public and private property (without permission), and that these actions have caused disastrous effects.

However, it soon becomes clear that plaintiff's fundamental concern is founded in her belief that the ORV bait program, and its alleged consequences, were intentionally caused by long-term nefarious "biowarfare conspiracy" orchestrated by defendants and others.  She believes that rabies is "man-made" as a ruse and that the bait program that was instituted through collusion to

create "the perfect storm for a Trojan Horse zombie apocalypse," and to "increase profitable earnings" in the "stock portfolios" of high-ranking government officials, Bankers and Pharmaceutical CEO[]s . . . scientists," and others.  She contends that this "stale scheme" began "in Germany . . . after Nazi scientists were recruited by the USA," and that to this day, "elites" are working with the government to "slow kill" and "experiment without consent" on American citizens "in the heart of Patriot country," and "then coming in to profit off the cure to make themselves look like a savior when they are the ones creating the disease to begin with."  Plaintiff also alleges that defendants and others are using the bait program to implement "metal RIFD chips to track and monitor individuals without their permission," to "enslave and control the masses," to "weaken [the] Untied States for military attack," and to cause Americans to suffer an "addiction to drugs."  She accuses the USDA Secretary of "treason" for allegedly "subsidizing foreign corporations desiring to kill or maim Americans, such as Canada, China, and Germany." At root, she believes that these wrongdoers seek a "one world government in which they control."  She closes by hypothesizing that "if God believed humans would not survive without vaccines, humans wouldn't have survived the Stone Ages.  It is a gross violation of Plaintiff's civil rights and an insult to God to tamper with the humane genome that God created without permission or consent."  She seeks injunctive relief, a criminal investigation and prosecution of defendants, and $1 billion in damages.  Plaintiff faces hurdles here that she cannot overcome.

      First, the court cannot exercise subject matter jurisdiction over a frivolous complaint. *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) ("Over the years, this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.' "), quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904); *Tooley v. Napolitano*, 586

F.3d 1006, 1010 (D.C. Cir. 2009) (examining cases dismissed "for patent insubstantiality," including where the plaintiff allegedly "was subjected to a campaign of surveillance and harassment deriving from uncertain origins."). A court may dismiss a complaint as frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), or "postulat[e] events and circumstances of a wholly fanciful kind," *Crisafi v. Holland*, 655 F.2d 1305, 1307–08 (D.C. Cir. 1981). The instant complaint falls squarely into this category.

Second, plaintiff has failed to establish standing, and "the defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (noting that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III"). Federal courts only have subject matter jurisdiction if there is a "Case" or "Controvers[y]" to be decided, U.S. Const. Art. III, § 2, and in the absence of any actual or threatened injury, no such case or controversy exists. The alleged "injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149–50 (2010).

Here, plaintiff alleges that she was "assured" that "they were not dropping baits on her property," but she nonetheless speculates that it is "likely" that her property has received the baits. She "suspects" that a "helicopter" dropped baits and other diseased vermin onto her property and into her home, based on its location, and as revenge for her previously attempted litigation. Beyond untenable speculation and paranoia, the complaint lacks any factual allegations showing that plaintiff actually sustained, or is likely to sustain, an injury resulting from the alleged conduct.

And to the extent that she alleges that defendants are "withholding information" from her, it is unclear what legal obligation these defendants have, if any, to provide her with any information. Indeed, plaintiff cites predominantly to criminal statutes and regulations, neither of which generally create a private right of action. *See Rockefeller v. U.S. Court of Appeals for the Tenth Circuit*, 248 F. Supp. 2d 17, 20 (D.D.C. 2003) (collecting cases); *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007) ("[The] Supreme Court has refused to imply a private right of action in a bare criminal statute.") (citation and internal quotation marks omitted). Nor may plaintiff compel a criminal investigation by any law enforcement agency by filing a civil complaint. *See Otero v. U.S. Attorney General*, 832 F.2d 141, 141–42 (11th Cir. 1987) (per curiam); *see also Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982). "[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Consequently, this case will be dismissed without prejudice. A separate order accompanies this memorandum opinion.

Date:   March 1, 2023            _____/s/_____
                                  RUDOLPH CONTRERAS
                                  United States District Judge